**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**BRUSH WELLMAN, INC.,**

Plaintiff,

-vs-

**JENERIC/PENTRON, INC., et al.,**

Defendants.

Case No. 1:03 CV 2305

Judge: Christopher A. Boyko

---

**JENERIC/PENTRON, INC., et al.,**

Plaintiffs,

-vs-

**BRUSH WELLMAN, INC.,**

Defendant.

Case No. 1:04 CV 721

Judge: Christopher A. Boyko

**JENERIC/PENTRON, INC.'S REPLY TO BRUSH WELLMAN, INC.'S AMENDED OPPOSITION TO JENERIC/PENTRON, INC.'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Brush's Opposition to Pentron's Cross-Motion for Partial Summary Judgment shows that Brush has no good answer to Pentron's sale-specific interpretation of the Indemnification Certificates. Because the parties' course of dealing clearly supports Pentron's interpretation, Brush argues, wrongly, that the Court must ignore this "extrinsic" evidence, yet offers extrinsic evidence of its own in the form of contracts between it and third parties having no bearing upon this litigation. (Brush Am. Opp. at 10, 11-13, Docket No. 81[1]). Similarly, because the case law

[1] Docket citations refer to Case No. 1:03 CV 2305.

uniformly supports Pentron's interpretation, Brush unsuccessfully attempts to distinguish the cases cited by Pentron, yet fails to cite a single case in favor of its own retroactive interpretation and application of the Certificates. (Id. at 6-8). Finally, because the plain language of the Certificates does not support its claim for unlimited indemnification in the underlying cases, Brush continues to ignore the Certificates' crucial limiting phrase, and makes no attempt to explain how *all* of its costs can possibly have been incurred "by reason of its sale" of beryllium to Pentron. (Id. at 4-5, 8-11, 18-19).

A. This Court Can And Should Consider The Parties' Course of Dealing, Which Demonstrates That Each Indemnification Certificate Applies Only To The Specific Sale Of Beryllium In Connection With Which It Was Executed.

Pentron described the course of dealings with Brush at length in its brief in support of its Motion for Partial summary Judgment, and Brush does not dispute the substance of Pentron's characterization in its Opposition. To briefly summarize: The parties executed five separate, identical Indemnification Certificates between 1989 and 1993, each in connection with a specific sale of beryllium. (Pentron Mot. Summ. J. Br. at 3-6, Docket No. 77). Each time the parties agreed to a new beryllium sale during this time period, Brush demanded that Pentron sign another Indemnification Certificate. (Id.). When Pentron received the beryllium from Brush, the packing slip and invoice often stated that a single Indemnification Certificate of a specific date applied to the shipment. (Id. at 5-6). This course of dealing plainly and objectively manifested the parties' shared understanding that each Certificate applied to the specific sale of beryllium in connection with which it was executed. Indeed, Brush effectively admits as much in its Amended Complaint, where it alleges that "[t]he Indemnification Certificates were part of the underlying sales transactions, and, as such, the consideration for the Indemnification Certificates was the beryllium that Brush provided to Jeneric Pentron." (Brush Am. Compl. ¶ 13, Docket No. 40).

The parties' course of dealing simply cannot be reconciled with Brush's interpretation of the Certificates, which would give each Certificate (or all of them cumulatively), unlimited application to every sale Brush ever made to Pentron. Brush therefore instructs the Court that it is not allowed to consider this "extrinsic" evidence. This is wrong. The Ohio Commercial Code provides that "[t]he express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other." Ohio Rev. Code Ann. § 1301.11(D) (emphasis added). Pentron's sale-specific interpretation of the Indemnification Certificates is perfectly reasonable—indeed, it is correct. There is no conflict between the express terms of the Certificates as interpreted by Pentron and the parties' course of dealing. To the contrary, it is only Brush's interpretation of the Certificates that is in conflict with the parties' course of dealing. The official commentary quoted by Brush in its Opposition therefore poses no obstacle to the Court's consideration of the parties' course of dealing. (Brush Am. Opp. at 11 n.5). Brush has simply misread the Ohio Commercial Code.

Although Brush argues that the Court may not consider the "extrinsic" evidence offered by Pentron, Brush attempts to insert extrinsic, and irrelevant, evidence of its own in the form of indemnification contracts that it signed with other parties. (Id. at 5). These the Court should not consider. Although the Ohio Commercial Code directs the Court to consider Petron's and Brush's course of dealing, it does not direct, or even authorize, the Court to consider Brush's dealings with third parties. Such evidence is irrelevant and inadmissible. *See Shifrin v. Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992).

Even if the Court were to consider Brush's contracts with other parties, they would shed little light on the meaning of the Indemnification Certificates at issue here. Although it appears that a few of Brush's other purchasers may, out of an abundance of caution, have inserted

language into their contracts with Brush to make it perfectly clear that they did not apply to prior sales, this fact does not mean that the Certificates at issue in this case should be interpreted to apply to past sales in the absence of similar language. Although the presence of such language would put the point well beyond any dispute, it is clear enough from the language of the Certificates at issue here, considered in light of the parties' course of dealing, that each Certificate applies only to the specific sale of beryllium in connection with which it was executed. Indeed, Brush effectively concedes the point in its Opposition, where it acknowledges that it would not agree to a sale of beryllium until its customer had signed an Indemnification Certificate. (Id. at 12). Moreover, as explained below, the cases cited by Pentron uniformly hold that indemnity contracts will not be interpreted to apply to past events in the absence of express language of retroactivity. Accordingly, the absence of any language addressing the retroactive effect of the Certificates is fatal to Brush's interpretation of the Certificates, not Pentron's.

Brush's interpretation results in a number of absurd consequences. The most obvious is that if Brush were correct, the single Indemnification Certificate that Pentron signed in 1989 would be sufficient to cover all beryllium sales, past and future, and yet the parties continued to execute Certificates until Pentron placed its final order in 1993. Brush attempts to explain this apparent paradox by arguing, implausibly, that the purpose of having Pentron sign multiple Indemnification Certificates was to impress upon Pentron the importance of communicating beryllium-related safety information to its employees. (Id. at 11-12).[2] Presumably Brush could

---

[2] Brush attempts to make its "educational" characterization of the purpose of the Certificates more plausible by describing the Certificates as "annual." This is not accurate. The parties did not execute a new Certificate each year – they executed a new Certificate each time they agreed to a discrete new sale of beryllium. As Pentron explained in its summary judgment brief:

have achieved its educational purpose by some means other than demanding that Pentron sign a legally operative contract containing a long technical paragraph setting forth Pentron's indemnity obligation. It would be better for Brush's argument if there were only one Certificate at issue in this case. Unfortunately for Brush, there are five.

B. The Case Law Uniformly Supports Pentron's Interpretation Of The Certificates, And Shows That Brush's Retroactive Interpretation Is Incorrect.

Pentron cited numerous cases in its summary judgment brief in support of the proposition that a contract of indemnity will not be interpreted to apply to past events or transactions in the absence of express language manifesting the parties' intent to apply the contract retroactively. (Pentron Mot. Summ. J. Br. at 19-21).[3] In its Opposition, Brush states simply that "[t]here is no

---

> Pentron thus signed one Indemnification Certificate on October 3, 1989, in connection with its agreement to purchase 650 pounds of beryllium from Brush in 1990. Pentron signed an identical Indemnification Certificate on October 4, 1990, another on October 2, 1991, and yet another on October 19, 1992. Each of these Certificates was executed in connection with an agreement to purchase a fixed quantity of beryllium from Brush for delivery during the subsequent calendar year. On December 15, 1993, Pentron signed one Indemnification Certificate in connection with its agreement to purchase 1200 pounds of beryllium from Brush to be delivered during the two-year period 1994-95. Consistent with the parties' practice of executing one Certificate in connection with each discrete purchase of beryllium, the parties did not execute a Certificate in 1994.

(Pentron Mot. Summ. J. Br. at 4-5).

[3] *See Chi. & Nw. Transp. Co. v. Emmet Fertilizer & Grain Co.*, 852 F.2d 358, 360 (8th Cir. 1988); *Prim Secs. Inc. v. McCarthy*, No. 05-CV-783, 2006 U.S. Dist LEXIS 55754 at *13-14 (N.D. Ohio Aug. 10, 2006); *Bunker Ramo-Eltra Corp. v. Fairchild Indus., Inc.*, 639 F. Supp. 409, 419 (D. Md. 1986); *Miele v. Equitable Life Assurance Co.*, 2002 U.S. Dist. LEXIS 5284, at *17-*18 (S.D.N.Y. 2002); *Paredes v. Hilton Int'l*, 896 F. Supp. 223, 230 (D.P.R. 1995); *U.S. v. Cont. Cas. Co.*, 49 F. Supp. 717, 720 (D. Md. 1943); *Evans v. Howard R. Green Co.*, 231 N.W.2d 907, 910 (Iowa 1975); *Nunnery v. Baker*, 195 So. 314, 316 (Miss. 1940); *Temmel v. 1515 Broadway Associates, L.P.*, 795 N.Y.S.2d 234 (N.Y. App. Div. 2005).

such rule." (Brush Am. Opp. at 6). To the contrary, there is such a rule,[4] and Brush's inability to cite a single case to the opposite effect confirms it.

Brush argues that Pentron's cases are inapposite because "all of the underlying injuries occurred, and all of the underlying lawsuits were filed, long after Pentron signed the indemnification certificates. Thus, Brush had not yet incurred any of the underlying liabilities at the time the indemnification agreement were signed." (Id.). This argument misses the point. Brush's interpretation of the Certificates is retroactive, and therefore wrong, because it attempts to apply the Certificates to *sales* of beryllium that occurred long before the first Certificate was executed. The cases cited by Pentron establish that it would be improper to apply the Certificates to losses that Brush incurs by reason of transactions that that predate the first Certificate.[5] Yet that is exactly what Brush has attempted to do with respect to its costs in *Millangue*, *Simon*, and *Blackstock*. As explained in detail in Pentron's summary judgment brief, in each of those cases, the plaintiffs allege losses as a result of exposures to Rexillium containing beryllium that Brush sold to Pentron long before the first Certificate was executed. (Pentron Mot. Summ. J. Br. at 6-10). Indeed, in *Blackstock*, the pleadings and evidence in the underlying case establish that Pentron's only sales of beryllium to the plaintiff's employer occurred in 1981 and 1982, eight years before the execution of the first Certificate. (Id. at 9). Any interpretation of the

---

[4] *See* 42 C.J.S. Indemnity § 13 (A contract of indemnity will not be interpreted to apply retroactively unless the contractual language "plainly manifests an intention not to be limited to future losses or liabilities, but to cover past transactions and existing losses or liabilities."). *See also supra* n.3 (citing decisions).

[5] Moreover, Brush's contention is factually doubtful and entirely without record support with respect to the timing of the underlying plaintiffs' injuries. Indeed, the *Millangue*, *Simon*, and *Blackstock* complaint citations that Brush refers to in its Opposition all allege injurious exposures during the period prior to the execution of the first Indemnification Certificate in 1989. (Brush Am. Opp. at 9-10).

Certificates that would extend them to these sales would be retroactive and inconsistent with every case Pentron is aware of that addresses the issue.

The one case that Brush cites in support of its interpretation is in fact taken from Pentron's summary judgment brief. As Pentron argued in its earlier brief, cases such as *Hawkins Construction Co. v. First Federal Savings & Loan Association*, "stand for the uncontroversial proposition that parties to an indemnification agreement may expressly provide for retroactive application of an indemnity agreement." (Pentron Mot. Summ. J. Br. at 21 (citing *Hawkins Constr. Co. v. First Fed. Sav. & Loan Ass'n*, 416 F. Supp. 388, 396 (S.D. Iowa 1976)). In *Hawkins*, the court construed an indemnification agreement between a corporate property owner and a construction contractor to cover the owner's liability for damage discovered *after* the execution of the contract but caused by conditions existed *before* the contract was executed. *Hawkins*, 416 F. Supp. at 396. In reaching this conclusion, the court emphasized that the contractor had expressly covenanted to "accept the construction site, with all defects and attendant potential for liability," as it existed at the time of the execution of the indemnity agreement. *Id.* The indemnity contract at issue in *Hawkins* thus expressly indicated that it would apply to pre-existing liabilities. The contracts at issue here do not. *Hawkins* therefore provides no support for Brush's interpretation of the Certificates, and instead supports Pentron's position insofar as the contract at issue in *Hawkins* contained the kind of retroactive language entirely absent in this case and required by the rule and case law cited above.

C. The Certificates Limit Brush's Right To Recovery To Losses Incurred "By Reason Of" Sales Of Beryllium To Pentron.

By their plain terms, the Indemnification Certificates allow Brush to recover only for losses that it incurs "by reason of its sale" of beryllium to Pentron. The parties' course of dealing

establishes that this language limits Brush's right of recovery to losses incurred by reason of sales of beryllium to Pentron to which an Indemnification Certificate applies.

The necessary implication of this language is that Brush may not recover from Pentron for losses that it incurs by reason of something other than a contractually covered sale of beryllium to Pentron. It may not recover for losses incurred by reason of sales of beryllium to Pentron to which no Certificate applies, nor may it recover for losses incurred by reason of sales of beryllium to third parties, nor by reason of its own intentional torts. Yet, as explained in detail in Pentron's summary judgment brief, Brush has attempted to recover for exactly such costs in each of the underlying cases. This it may not do.

Brush attempts to avoid this obvious, if inconvenient, truth by substituting the underlying plaintiffs' losses for its own. Brush thus argues that "Pentron's argument on this issue would make sense if the Indemnification Certificates provided that Pentron must indemnify Brush only where a plaintiff alleges that the *sole* cause of his injury was Brush's sale, supply, or shipment of beryllium to Pentron." (Brush Opp. at 10). Once again, Brush has missed the boat. The Certificates refer not to the underlying Plaintiffs' losses, but to Brush's. It is Brush's losses that must be incurred by reason of a contractually covered sale of beryllium to Pentron in order to be indemnifiable by Pentron. In each of the underlying cases, it is necessarily the case that some portion of Brush's losses have been incurred by reason of something other than a contractually covered sale of beryllium to Pentron. Pentron has no duty to indemnify Brush for these losses because Brush did not incur them by reason of a contractually covered sale of beryllium to Pentron. In all of these cases, Brush *must* have incurred some portion of its losses by reason of sales of beryllium to Pentron to which no Certificate applied. In *Hill*, at least some portion of Brush's costs *must* be attributed to the plaintiff's allegation that Brush committed intentional

torts. Finally, in *Hill* and *Blackstock*, at least some portion of Brush's costs—and most likely all of them—*must* be attributed to the plaintiffs' allegations that they were exposed to beryllium that Brush sold to Pentron's competitor, Jensen.[6] The Certificates do not extend to these losses, and Pentron does not have to pay for them.

In sum, Brush has offered no persuasive reason to think that its interpretation of the Certificates is correct, or that Pentron's interpretation is wrong. The Court should therefore grant summary judgment in Pentron's favor on the issue of contractual interpretation by holding that each Indemnification Certificate applies only to the specific sale of beryllium in connection with which it was executed.

D. Brush Still Has Not Offered Any Evidence Of Its Indemnifiable Losses.

The proper measure of Brush's damages remains in dispute because Brush continues to claim a right to indemnity for losses in excess of those covered by the Indemnification Certificates. In its Opposition, Brush argues that "the Certificates provide that Pentron will indemnify Brush against *any* lawsuits or expenses relating in *any* way to beryllium that Brush may be subject to because of its status as a beryllium supplier to Pentron." (Id. at 18). Of course, this is not what the Certificates say. They say that Pentron will indemnify Brush for any

---

[6] In its summary judgment brief, Pentron demonstrated that none of the Rexillium it sold to Regina Hill's employer contained any of Brush's beryllium because Pentron had, by that time, stopped purchasing beryllium from Brush. (Pentron Mot. Summ. J. Br. at 7-8). Pentron thus argued that Brush's costs in *Hill* can only have been incurred by reason of its sales to Pentron's competitor, Jensen. In its Opposition, Brush notes that "[t]he Second Amended Complaint in *Hill* specifically alleges that plaintiff was exposed to Pentron's Rexillium in 1980-1988," a period during which Pentron's Rexillium would have contained Brush's beryllium. (Brush Am. Opp. at 3). These sales, however, pre-date the first Indemnification Certificate and therefore are not compensable. Moreover, the plaintiff in *Hill* added this allegation very late in the litigation. It therefore remains the case that most, if not all, of Brush's costs in defending the *Hill* case before the amendment of the complaint were incurred by reason of its sales to Jensen, not Pentron.

costs that it incurs by reason of its sale, supply, or shipment of beryllium to Pentron. As demonstrated in Pentron's summary judgment brief and herein, Brush has claimed a right to indemnification for losses it has incurred for other reasons—costs which Pentron has no duty to indemnify. Summary judgment on the issue of damages is therefore inappropriate at this time.

Respectfully submitted,

/s/ Arthur M. Kaufman

OF COUNSEL:

HAHN LOESER & PARKS LLP

Arthur M. Kaufman (#0017724)
Sean M. Ansberry (#0071029)
Hahn Loeser & Parks LLP
3300 BP Tower
200 Public Square
Cleveland, OH 44114-2301
Telephone: (216) 621-0150
Facsimile: (216) 241-2824
E-mail: amkaufman@hahnlaw.com
smansberry@hahnlaw.com

AKIN GUMP STRAUSS HAUER & FELD LLP

Michael A. Fitzpatrick
Cheryl A. Falvey
James E. Sherry
1333 New Hampshire Ave. NW
Washington, DC 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
E-mail: mfitzpatrick@akingump.com
cfalvey@akingump.com
jsherry@akingump.com

Attorneys for Defendants Jeneric/Pentron, Inc. and Pentron Laboratory Technologies, L.L.C.

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Jeneric/Pentron, Inc.'s Reply to Brush Wellman, Inc.'s Amended Opposition to Jeneric/Pentron, Inc.'s Cross-Motion for Partial Summary Judgment was electronically filed on July 16, 2007. Notice of this filing will be sent to all other counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Arthur M. Kaufman
One of the Attorneys for Defendants
Jeneric/Pentron, Inc. and Pentron
Laboratory Technologies, L.L.C.